## IRA BARROWS *vs.* BENONI CARPENTER & another.

A declaration alleged that the defendants published or caused to be published in a certain pamphlet, a libel concerning the plaintiff.  From the evidence, it appeared that the defendants were instrumental in procuring the vote of a medical society expelling the plaintiff therefrom for gross immorality.  The vote was published among the transactions of the society, by the regular committee of publication, of which the defendants were not members.  *Held,* that the allegation in the declaration was not supported.

THIS was an action for a libel, alleging that the defendants, Benoni Carpenter and D. Humphreys Storer, on the 30th of May, 1850, caused to be published in a certain pamphlet called " Medical Communications of the Massachusetts

Medical Society, volume eighth, number two, second series, volume fourth, part second," the following false and malicious libel, concerning the plaintiff; " Dr. Storer moved that the counsellors propose to the society the expulsion of Dr. Barrows on the ground of 'gross immorality,' in having broken his solemn pledge given to Dr. Carpenter. Dr. Carpenter acted as accuser, and Dr. Barrows (present by invitation) defended himself."

The defendants, among other grounds of defence, denied the publication of any libel on the plaintiff, and averred that the publication complained of, was a part of the proceedings of the counsellors of the Massachusetts Medical Society, a corporation; and that it appeared by the pamphlet itself, that at a meeting of the counsellors, held May 30th, 1850, the defendants were counsellors, and were present, and whatever was said by them, was said as such members, but was not caused to be published. At the trial before *Fletcher*, J. the plaintiff introduced the following evidence, subject to the objection of the defendants as to its competency:

Henry I. Bowditch, M. D. testified that in 1850 and 1851, he was the recording secretary of the Massachusetts Medical Society, and of the counsellors, and he produced the books of records, which he received from his predecessor, and in which he had made his own entries ever since, and until Dr. Ware was elected in his place.

The defendants objected to the introduction and reading of the records on the ground that the declaration set forth that the libel was published in a pamphlet. The records showed the passage of the vote set out in the declaration.

Dr. Bowditch then proceeded as follows: " I was present when Dr. Carpenter offered the first resolutions as follows:

" ' *Resolved*, That all homœopathic practitioners are, or should be, denominated irregular practitioners, and, according to the by-laws of this society made and provided, ought to be expelled from membership.

" *Resolved*, That Ira Barrows, of Norton, now a member of this society, ought to be, and by a vote of this society is, expelled from membership, for the following reasons:

" ' 1. For being guilty of dishonorable conduct. 2. For being the maker and vender, at sundry different times, of certain and several quack medicines. 3. For being an irregular practitioner; having adopted the homœopathic, infinitesimal, or loafsugar system.'

" On motion of Dr. Bigelow, the first resolve was laid upon the table; and, on motion of Dr. J. B. S. Jackson, the resolve relative to Dr. Barrows was referred to a committee of three, consisting of Dr. Caleb Swan, of Easton, Dr. Randall, of Rehoboth, and Dr. Phelps, of Attleborough.

" At the meeting, May 30th, 1850, Dr. Barrows and Drs. Carpenter and Storer, were present, and Dr. Storer made a motion; I took the motion from his mouth. Some discussion was had as to the form of it, and after some discussion, it was determined to use the words ' gross immorality,' of our by-laws, with the addition in relation to Dr. Carpenter, by way of explanation. ' Gross · immorality ' were the only terms in our by-laws applicable to the case, and it was determined to make use of these words. Dr. Storer having heard the case stated by Dr. Carpenter, and Dr. Barrows's defence, moved the expulsion of Dr. Barrows. Dr. Jacob Bigelow suggested that the words of the by-laws, ' gross immorality,' be used. Dr. Storer said he did not care what words were used, he thought Dr. Barrows should be expelled. When the vote had been reduced to writing by the secretary, it was read and adopted ' *nem. con.*'

" After the counsellors adjourned, I made a record of their proceedings. I submitted these and the others to the society, at their annual meeting, and to the committee of publication. They were subsequently copied and published, and the pamphlet described in the writ is a correct publication."

The rules and orders of the counsellors of the society were then read as follows:

" ' 1. A publication shall be issued annually, under the direction of the committee on publications, as early as may be after the annual meeting; and shall be distributed by the librarian to each fellow and retired member, and to the honorary members of the society by mail, or through the medium of the

district societies. Such publications shall contain the annual discourse, unless otherwise directed by the society or the counsellors, and such other medical communications as the society or the counsellors may authorize to be published; and, in an appendix, an abstract of the proceedings of the society and of the counsellors, comprising the record of all their transactions, excepting only such as are of a private or personal nature ; a list of the officers of the society, and of each district society; and a list of those who have become fellows or honorary members, and of those who have resigned fellowship during the preceding year.*

" ' 2. There may be also annually prepared, and distributed to those who have paid their dues for the corresponding year, under the direction of the counsellors, and at the expense of the society, a retrospect of the medical literature and science of the preceding year, having reference especially to discoveries and improvements of practical value.

" ' 3. At a meeting of the counsellors, all nominations of committees shall be made by the president, unless otherwise ordered.

" ' 4. At the annual meeting of the counsellors, three standing committees shall be elected, viz : The committee on publications, the committee on resignations, and the committee of arrangements for the anniversary.

" ' 5. At the third stated meeting of the counsellors, there shall be chosen a committee to examine the treasurer's accounts, on the week preceding the annual meeting, and a committee to examine the library and cabinet; both of which committees shall make their reports to the counsellors at their annual meeting.' "

Dr. Bowditch continued ; " The report of the counsellors recommending the expulsion, was made to the annual meeting in Worcester, in May, 1851. A committee of three was appointed to present and conduct the proceedings against the

---

* By a vote of the counsellors passed May 30th, 1850, the committee were directed to publish annually a list of all the fellows of the society, and likewise the names of all counsellors present at each meeting of the board.

plaintiff, to which Dr. Carpenter was subsequently added. This was done upon my motion, as secretary."

Upon cross-examination, Dr. Bowditch stated, that " when the resolutions were originally offered by Dr. Carpenter, a part of them was referred to a committee of three persons, viz: Dr. Swan, Dr. Randall, and Dr. Phelps. The report of this committee was read May 30th, 1850. The report was accepted and the general discussion took place. Dr. Barrows was not a counsellor, but was invited to be present. Dr. Carpenter was a counsellor. After the accusation and defence, the motion was made by Dr. Storer. I believe Dr. Storer was not acquainted with Dr. Barrows. I notified Dr. Barrows that the proposition for his expulsion would be laid before the annual meeting in May, 1851, at Worcester. At that time Dr. Barrows was present, and his case was presented to the society by Dr. Wilde. The society adjourned for a special meeting on the case. They wanted a thorough investigation The adjourned meeting was held in Boston, October 2, 1851, Dr. Barrows was present. Dr. Wilde made a defence for him. The final vote was then passed. I carried the records to the committee on publication, according to our usage. Dr. John Jeffries, Dr. Charles E. Ware, and Dr. S. Parkman, were the committee. The records were then copied and sent to the printer. After the records are made up and given to the committee on publication, they have exclusive control over them. No member of the society can direct what should be published or omitted."

Upon the foregoing facts, and others not material to be reported, the presiding judge suggested that the case be taken from the jury, and be presented to the whole court for their opinion. And it was agreed that if the court shall be of opinion that upon the above evidence, the plaintiff cannot maintain his action, he is to be nonsuit, otherwise a trial is to be had.

*C. B. Farnsworth,* for the plaintiff.

*T. D. Eliot,* for the defendants.

THOMAS, J. This was an action of tort for a libel; the declaration in substance alleges that the defendants caused to

be published in a pamphlet (described in the declaration) a charge that the plaintiff had been guilty of gross immorality in having broken his solemn pledge given to Dr. Carpenter.

Several questions are raised by the report, and by the arguments of the learned counsel, and among others whether there was any publication by the defendants as alleged in the declaration. The charge is of a publication in a pamphlet; no other publication is averred, and we are of opinion that upon the evidence reported, there was no publication by the defendants. To determine this, we must consider what it is the defendants are charged with publishing, and secondly, their agency, if any, in causing the publication.

1. The facts show that at a meeting of the counsellors of the Massachusetts Medical Society, two resolutions were offered by the defendant Carpenter, one for the expulsion of homœopathic practitioners generally, and the other for the expulsion of the plaintiff for being guilty of dishonorable conduct and irregular practice; the first resolve was laid upon the table, the second referred to a committee of three counsellors. This committee at a subsequent meeting held May 30th, 1850, made their report. The plaintiff and defendants were present. The case having been stated by Dr. Carpenter, and a defence made by Dr. Barrows, Dr. Storer moved the expulsion of the plaintiff. This motion was orally made, and Dr. Bigelow suggested that the words of the by-laws " gross immorality " should be used. The defendant Storer stated he did not care what words were used, but he thought the plaintiff should be expelled. Some discussion was had as to the form of the motion, and it was determined to use the words of the by-laws " gross immorality with the addition," in relation to Dr. Carpenter by way of explanation, but at whose motion or suggestion the addition or explanation was made does not appear. The motion was reduced to writing by the secretary and was read and adopted. The record by the secretary is " Dr. Storer moved that the counsellors propose to the society the expulsion of Dr. Barrows, on the ground of ' gross immorality ' in having broken his solemn written contract given to Dr. Carpenter."

It is this vote printed in the annual publication of the Mas-

39 *

sachusetts Medical Society, which the defendants are charged with having caused to be published in a pamphlet. The motion made by Dr. Storer was for the expulsion of the plain-tiff. In its present form, and as containing the charge of gross immorality alleged in the libel, in the plaintiff's declaration, it was neither written by Dr. Storer or dictated by him. Neither was it written or dictated by Dr. Carpenter. He had intro-duced a motion at a previous meeting, for the expulsion of Dr. Barrows for being guilty of dishonorable conduct, and for irregular practice. That motion was referred to a committee and it was upon their report that the motion to propose to the society the expulsion of the plaintiff was made and passed. The motion so passed by the counsellors makes part of their record. What agency, if any, had the defendants in causing it to appear in the publication of the society? The report shows that there was a standing committee of the counsellors, called the committee on publications, to which neither of the defendants belonged. The annual publications are made under the direction of this committee. The rules and orders of the counsellors require that these publications shall contain among other matters, in an appendix, an abstract of the pro-ceedings of the society and of the counsellors, comprising the record of all their transactions, excepting only such as are of a private or personal nature.

The plaintiff's witness, Dr. Bowditch, testified that he carried the records to the committee on publication according to usage; that the records were copied and sent to the printer; that after the records are made up and given to the com-mittee on publication, they have the exclusive control of them, and no member of the society can direct what shall be pub-lished or omitted. There is no evidence that the defendants, or either of them, induced or influenced the committee to publish any part of the record. On the other hand it was the publication of the standing committee upon their own respon-sibility, and in the exercise of their own discretion, and without any suggestion from the defendants.

We are of opinion that upon this evidence the charge in the declaration is not established that the defendants pub-

lished, or caused to be published, the charge set forth in the declaration. The court are of opinion that by the evidence the plaintiff cannot maintain his action; and by the agreement of the parties the plaintiff is to become nonsuit.

*Plaintiff nonsuit.*